**In the Matter of Elmer H. HOSTETLER and Esther C. Hostetler, Debtors.**

**Bankruptcy No. 85–00020E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 18, 1985.

Michael Halliday, and Halliday & Halliday, P.C., Greenville, Pa., for debtors.

William Pineo and Prather, Prather & Pineo, Meadville, Pa., for assignees.

## MEMORANDUM AND ORDER ON PETITION TO DISCONTINUE ASSIGNMENTS OF MILK PROCEEDS

WM. B. WASHABAUGH, Jr., Bankruptcy Judge:

This matter comes before the Court on a Petition of the farmer-debtors to "discontinue assignments."

The Court directed the debtors to file a list of the names and addresses of the alleged assignees which was complied with, and a hearing was held on the matter in Mercer County some ninety miles distant from the Bankruptcy Court at Erie March 20, 1985. There is no disagreement among counsel as to the salient facts stated by counsel at the hearing and restated without disagreement in their briefs and admitted in the debtors' schedules.

From the uncontradicted statements of counsel on the record at the hearing, in their briefs and admitted in the debtors' schedules which the Court directs shall be admitted to the record, it appears that the Farmers Milk Producers Association, takes the debtors' milk, sells it, and after paying the fixed amounts to assignees, remits the balance to the debtors. The assignments to creditors of these amounts had been made and were in effect for periods beginning more than ninety days before the within Chapter 11 filing as to which no issue of lack of consideration was raised, as follows:

| CREDITOR | BALANCE OF OBLIGATION | MONTHLY PAYMENT |
|---|---|---|
| Sperry New Holland | $ 5,381.20 | $ 329.02 |
| First National Bank of Ashland | 4,168.95 | 827.35 |
| Mercer County State Bank | 39,117.58 | 1,338.76 |
| Elder Sales and Service | 24,345.00 | 400.00 |
| Chester Leveto | 249,700.00 | 2,500.00 |

The assignments were of monthly amounts to be paid the creditors from the proceeds of sales of the debtors' milk as collateral for the payment of the total amounts of the debtors' obligations to the assignees, and financing statements perfecting security interests in farm machinery, equipment and livestock as well as the payments from milk sales were filed in the county of the debtors' residence, Mercer County, with respect to the claims of the Mercer County State Bank, Elder Sales and Service and Chester Leveto. No financing statement appears to have been filed for Sperry New Holland, and that of the First National Bank of Ashland's was erroneously filed in Crawford County instead of Mercer County where the debtors resided as required by 13 Pa.C.S.A. 9401.

■ The holder of a contract right or secured transaction is entitled to a continuity of interest in the subject collateral and identifiable proceeds therefrom under Section 9306(b) of the Uniform Commercial Code without right of termination or modification in the debtors unless adequate protection guaranteeing full payment is tendered and approved under 11 U.S.C. § 363(e) or such termination is consented to or ordered by the Court on approval of the adequacy of the protection under 11 U.S.C. § 363(c)(2)(A) and (B). No such protection was offered by the debtors or submitted for approval to the Court and as the security interests were perfected and assignments made more than ninety days before the filing of the Chapter 11 petition and no issue of preferential transfer in consideration of a past due indebtedness is alleged, the application to discontinue the assignments will be refused.

No filing of a financing statement is alleged or discernable from the record in respect to the claim of Sperry New Holland, and the financing statement relating to that of the First National Bank of Ashland is stated in petitioners' brief to have been erroneously recorded in Crawford rather than Mercer County so it appears that no security interest was perfected in respect to either of these obligations. However, they are comparitively small in amount, $5,381.20 in respect to Sperry New Holland ($329.00 per month), and $4,168.95 as to the First National Bank of Ashland ($827.35 per month) as compared to the total of the obligations ($322,712.73) and the total monthly collections of the Farmers Union from all of the sales of milk of $6,059.65 per month admitted in the schedules and it therefore appears that these assignments were not made to secure repayment of indebtednesses which, alone or with other indebtednesses to the same assignee, constitute *"significant"* portions of the debtors' indebtednesses and required perfection by a UCC filing: 13 Pa.C.S.A. § 9302(a)(5).

■ All five assignments both filed and unfiled, are admitted by the debtors in their petition to discontinue and in their schedules and in their brief, and are sufficient to create perfected property interests in the collection proceeds. The application to discontinue the payments to all of the assignees without reference to whether or not they are perfected security interests under the U.C.C., must be denied in the absence of an offer of adequate protection of the creditors' right to payment as secured by said assignments of proceeds of the milk collection contract in specific amounts.

The alternative argument of the debtors that the payments be denied the respective creditors from the sales of milk under the marshalling of assets doctrine must also be denied as this doctrine only applies to liquidation situations where a lien creditor has security against two types of collateral and the lien of another creditor with a junior lien against one of them will be impaired by payment therefrom of the claim of the creditor adequately secured by the other collateral when he can just as readily be paid therefrom without impairing the right to payment of the competing lien holder. Moreover, the liens of the creditors who perfected their security interests did so not only against the assigned proceeds of milk sale contracts, but also against items of equipment, farm machinery and livestock, and in some instances were given to secure the purchase money therefor as well as other obligations the breakdown of which has not been supplied to us. No facts or applicable legal reasons have been advanced under which the Court would have authority to deny the secured creditors the rights to continued repayment of their claims from the monthly cash sales of the debtors' milk, and for all the above reasons the applications to discontinue the assignments must be denied.

The prayer of the debtors' petition to discontinue the assignments of milk sale proceeds is hereby denied.